John D. Bennett, S.
This is a proceeding for the issuance of ancillary letters of administration. with the will annexed, which presents a novel and important problem as to the power of the court. The question of law involved was twice presented to the Supreme Court, Nassau County, which court left the matter open to be determined in this proceeding. A review of the Supreme Court action is necessary for the understanding of the problem here presented.
On or about August 25, 1954, Eobert A. Eiggle was involved in an automobile accident in the State of Wyoming. As a result of that accident, suit was brought by Mabel Wells in the Supreme Court, Nassau County. Jurisdiction of the defendant was obtained by personal service upon him within the State of New York.
Eobert A. Eiggle was insured under a contract made by the insurance company with Walter S. Wells, providing for the usual exoneration and indemnity, to wit, that the insurance company would pay all sums for which the insured would become liable by reason of bodily injury, defend any suit against the insured, and pay all expenses of suit, costs and interest after judgment. This contract was entered into in Nassau County, New York, and the insurance company was duty authorized to engage in business in this State. Pursuant to this contract the insurance company defended the said Eobert A. Eiggle in the suit brought by Mabel Wells.
Incidentally the insurance company is designated as (American) Lumbermans Mutual Casualty Company of Illinois in the petition, (American) Lumbermens Mutual Casualty Company of *990 Illinois in the contract, Lumbermens Mutual Casualty Company in the stipulation, and American Lumbermens Insurance Company in the memorandum of law of defendant, all four names referring to the same company.
Robert A. Riggle died January 27, 1958, a resident of the State of Illinois. His last will and testament was admitted to probate in Clay County, Illinois, January 31, 1958 and letters testamentary were issued to Mabel Riggle on that date. On July 17,1958, a motion was made in the Supreme Court to dismiss the action upon the ground that there was no jurisdiction because of the death of the nonresident defendant. On July 28, 1958, Mr. Justice Pittoni denied the motion without going into the merits, upon the ground that upon the death of the defendant the relationship of attorney and client had ceased and the attorneys were not authorized to represent the estate. Thereafter on January 9, 1959, the petition for ancillary letters was filed in this court.
A second motion was made in the Supreme Court on February 16, 1959, to dismiss the suit pending therein and on February 19, 1959, Mr. Justice Meyer, rendered the following decision:
‘ ‘ This motion is denied without prejudice to renewal should the Surrogate in the proceeding now before him refuse to issue letters. Since personal service was made on the defendant in New York prior to his death, the Court has jurisdiction. C. P. A. section 84 preserves the action, provided there is a properly designated representative in New York who may be substituted. Since the question before the Surrogate is the appointment of such a representative, it would be premature now to dismiss the action.”
Mabel Riggle, the executrix appointed in Illinois, has appeared specially in this proceeding and contests the issuance of letters upon the ground that the deceased was a resident of the State of Illinois, who owned no property of any kind in this State and that no property of the decedent is presently in this State.
The applicable statute is section 45 of the Surrogate’s Court Act, which provides that an ancillary administrator may be appointed:
“ 3. Where the decedent, not being a resident of the state, died without the state, leaving personal property within that county, and no other; or leaving personal property which has since his death, come into that county, and no other, and remains unadministered ’ ’.
This is in accord with the general law set forth in the Restatement of the Law of Conflicts (§ 467). as follows:
*991 ‘1 An administrator is appointed to administer the estate of a decedent by a competent court of a state, * * * (b) where there are assets of the decedent at the time of the death of the decedent or at the time of the appointment of the administrator
Beale in the Conflict of Laws (Yol. 3, § 467.2, p. 1451), summarizes the matter as follows: ‘ ‘ States other than that of the domicil have no jurisdiction to appoint an administrator unless there are local assets to- be administered or a debtor to be sued.”
There is no dispute that there must be some res, assets or debtor in this county and State to warrant the issuance of ancillary letters by this court. The petitioner claims that the insurance contract and the defense of the suit by the insurance company constitutes such a res, asset, or debtor. The foreign executrix contends that it does not. Neither party has cited any decision in this State that passes definitely upon this point, nor has the court found any in its research.
Cosgrove v. Weierman (3 A D 2d 940 [2d Dept., 1957]) involved a somewhat similar situation. In that case an action was brought in the Supreme Court to recover damages for injuries due to the operation of an automobile outside of this State. The defendant was served personally within this State and answered the action. The defendant then died, a nonresident, and it was held that these facts were insufficient to warrant the substitution of the executrix appointed in a foreign State.
The decision in the Cosgrove case (supra) made no mention of insurance. This court secured and examined the record on appeal and found no mention either in the pleadings or the briefs of any insurance contract. For that reason the Cosgrove decision (supra) is in no way determinative of whether an insurance contract constitutes a res, asset or debtor relationship giving this court jurisdiction.
Definitions are of little help. “ Res ” has been aptly defined as “ everything that may form an object of rights (See Cyclopedic Law Dictionary [3d ed.] quoted in Matter of Gantt [Hurtado & Cia], 286 App. Div. 212, 218.) “ A simple contract debt is said to be assets at the domicil of the debtor; * * * What we mean by saying that a debt is assets at the domicil of the debtor is that the existence of the debt is sufficient cause for the appointment (of an ancillary administrator). The word assets, as early used by the courts of probate, is the Norman French assetz, the modern French ‘ assez,’ meaning sufficient, *992 enough ” (3 Beale, Conflict of Laws, § 467.3). In short, a thing is a res, asset or debt if the courts say that it is sufficient to warrant the court in taking jurisdiction and appointing a fiduciary.
Turning to the decisions in other States, there is a sharp irreconcilable conflict. It appears that the States of Kansas, Colorado, Oklahoma, Michigan and Idaho hold that right of exoneration and indemnity under a policy of insurance is not an asset empowering the court to issue ancillary letters (Matter of Rogers, 164 Kan. 492 [1948]; Wheat v. Fidelity & Cas. Co. of N. Y., 128 Col. 236; Matter of Reardon, 203 Okla. 54; Olson v. Preferred Auto Ins. Co., 259 Mich. 612; Fell v. Dice, 135 F. Supp. 851 [U. S. Dist. Ct., Idaho, S. D.]).
There is a New Jersey decision, Matter of Roche (16 N. J. 579 [1954]), that is frequently cited as sustaining the holding that an insurance policy is not an asset. In that ease, however, there is a specific finding that the insurance company involved was not a resident of the State of New Jersey. That is similar to the results reached by the Florida court in Matter of Klipple (101 So. 2d 924 [Fla.]). The question remains open as to what result the New Jersey courts would have reached had the insurance company been a resident of that State.
On the other side of the question, we find decisions in New Hampshire, Illinois, Massachusetts, Oregon, Iowa, Texas and Georgia holding the insurance contract and liability thereunder to be personal estate of the decedent, giving the court the power to grant ancillary letters (Robinson v. Carroll, 87 N. H. 114 [1934]; Furst v. Brady, 375 Ill. 425 [1940]; Gordon v. Shea, 300 Mass. 95 [1938]; Matter of Vilas, 166 Ore. 115 [1941]; Liberty v. Kinney, 242 Iowa 656; Davis v. Cayton, 214 S. W. 2d 801 [Tex.]; American Surety Co. v. Sutherland, 35 F. Supp. 353 [U. S. Dist. Ct., N. D. Georgia, 1940]).
To analyze these cases would require more space than is available in a decision. This court feels that the Kansas rule that the exoneration and liability under an insurance contract is not an asset is technical, artificial and unrealistic. The rights under an insurance contract have a definite commercial value. In the case before this court, the insurance company received a premium of $62.35 per annum for this obligation. To say that such rights are insufficient to give this court jurisdiction, but that a $5 watch found in this State would confer such jurisdiction appears to put theory in place of facts.
The New Hampshire decision and those following it appear to the court to give a true picture of actual conditions. In Robinson v. Carroll (87 N. H. 114, 117, supra) the court spid: *993 “ Although performance of the promise claimed as estate is not yet due and will not be until its conditions are fulfilled, it is an obligation of a contractual nature. It is estate, in the statutory meaning, owned by the decedent when he died. The event had taken place on account of which he was entitled to protection if certain things were done. The claim which was then his is no different, to constitute estate, than an unmatured note. If the promise may not be presently enforced, it has present value. * * * The conditions to which the promise is subject and which bar action on it until their fulfillment do not make it any the less an existing obligation.”
The Massachusetts court in Gordon v. Shea (300 Mass. 95, 100, supra) points out another aspect of this question: “If, however, ‘ the right of exoneration and indemnity under the policy of insurance * * * ’ would not be estate of the deceased until judgment was recovered against him in the tort action, the appointment would not be invalidated, because a judgment recovered subsequently to the appointment affords an ‘ occasion for the administrator to act [and] * * * the appointment is valid.’ Am. Law Inst. Restatement: Conflict of Laws, § 467, Comment a.”
This court therefore determines that the insurance policy, written in this county by a company doing business in New York, with the obligations of exoneration and indemnity arising therefrom constitutes a sufficient res, asset and/or debt to give this court jurisdiction to grant ancillary letters of administration with the will annexed herein.
Insofar as any policy of this State has been expressed in its legislation, this court interprets such policy to be in accordance with the decision arrived at herein. Section 84 of the Civil Practice Act preserves actions in the Supreme Court and section 52 of the Vehicle and Traffic Law subjects nonresidents to suit in this State for accidents occurring on our highways and includes foreign representatives. While neither of these laws apply to the present case, they show a tendency to prevent the abatement of such actions. The decision of this court implements and makes effective section 84 of the Civil Practice Act.
Since the foreign executrix has not expressly renounced her right to letters, ancillary letters testamentary will issue to her if she qualifies within 15 days after the date of the signing of the decree herein. If she fails to so qualify within that time, she will have been deemed to renounce and letters of administration with the wifi annexed will issue to the Public Administrator,
Settle decree on five days’ notice.